IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 17-cr-467-1 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| KEITH BROWN | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant Keith Brown's motion for judgment of acquittal [354] is denied. Counsel are directed to jointly email the Courtroom Deputy to schedule a sentencing date.

**I.      Background**

On October 24, 2019 a grand jury returned a second superseding indictment [219] against defendants Keith Brown and Dontae Montgomery. Specifically, Brown was charged in Count One with being a felon in possession of a handgun and in Count Four with being a felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1). Count Two charged Brown with attempting to obstruct an official proceeding—namely, the prior criminal trial in this case held in 2019, by testifying falsely in that trial, in violation of 18 U.S.C. § 1512(c)(2) and Count Three charged him with making materially false declarations— committing perjury—in that trial, in violation of 18 U.S.C. § 1623.

Brown entered a not guilty plea to all four counts and proceeded to an eight-day jury trial in October 2020. During the trial, the Government called ten witnesses from the Chicago Police Department (CPD) who were involved in Brown's two firearms arrests, an investigator from the Cook County Jail, and an investigator from the City's Office of Emergency Management and Communications. Brown testified in his own defense. Brown also called co-Defendant Dontae

Montgomery as a live witness at trial,[1] and the transcripts of several unavailable witnesses who had testified in Brown's first trial were read to the jury.

On October 15, 2020, the jury returned a verdict of guilty against Brown on Counts Two, Three, and Four. The jury was unable to reach a verdict on Count One. In the instant motion, Brown seeks a judgment of acquittal on the three counts for which he was convicted.

## II. Legal Standard

Federal Rule of Criminal Procedure 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." When, as here, a defendant makes a Rule 29(a) motion at the close of the government's case and the court reserves decision, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

Motions for acquittal are rarely granted because the applicable standard sets an extremely high bar: "In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010); see also *United States v. Jones*, 713 F.3d 336, 339-40 (7th Cir. 2013). The presiding judge must view the "evidence in the light most favorable to the prosecution," and the defendant "'must convince' the court that, even in that light, 'no rational trier of fact could have found him guilty beyond a reasonable doubt.'" *Warren*, 593 F.3d at 546 (quoting *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009)); see also *United States v. Rahman*, 805 F.3d 822, 836 (7th Cir. 2015). In other

---

[1] Montgomery entered a plea of guilty to Count Five of the superseding indictment, also a felon in possession charge, and was awaiting sentencing at the time of Brown's trial. The Court subsequently sentenced Montgomery to a 96-month term of imprisonment. At the time of sentencing, the Court determined that an enhancement for obstruction of justice applied on the basis of Montgomery's testimony at Brown's trial.

2

words, a court will "set aside a jury's guilty verdict only if 'the record contains no evidence, regardless of how it is weighed,' from which a jury could have returned a conviction." *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009) (quoting *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)). Because "[s]orting the facts and inferences is a task for the jury" (*Warren*, 593 F.3d at 547), judges "do not reassess the weight of the evidence or second guess the trier of fact's credibility determinations." *United States v. Arthur*, 582 F.3d 713, 717 (7th Cir. 2009). Instead,

> [t]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Moore*, 572 F.3d at 337 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781 (1979)).

### III. Analysis

#### A. Counts Two and Three

To prove Brown guilty of the charge in Court Two that he violated 18 U.S.C. § 1512(c)(2), the Government had to prove that he corruptly attempted to obstruct, influence, or impede his prior criminal trial in 2019 by falsely testifying that at the moment he was being arrested by CPD officers on weapons charges on February 6, 2016 he was on the telephone with his fiancée, Rose Reeves, who was then incarcerated at Cook County Jail. See [372 (Jury Instruction, p. 28).] To prove Brown guilty of the charge in Count Three that he violated 18 U.S.C. § 1623, the government had to prove that he testified falsely in his prior trial as charged in the indictment; that his testimony concerned a material matter; and that he knew the testimony was false. See [372 (Jury Instruction, p. 32).] Specifically, the government had to prove that Brown's testimony that he was in the back

parking lot of TJ's Barbershop on the telephone with Rose Reeves in a recorded call from Cook County Jail when he saw Dewayne White and another unknown individual run out the back door of the barbershop being pursued by two police officers, and was not in possession of a firearm on February 6, 2016, was false.

At his second trial, Brown admitted that his testimony at his first trial was not accurate. He claimed, however, that it was not intentionally false, but rather a mistake. Specifically, Brown testified at the second trial that he had in fact been on the telephone at the moment of his arrest by CPD officers on the evening of February 6, 2016, but that his claim at the first trial that he was speaking with Rose Reeves in what he knew was a recorded call from Cook County Jail was a simple mistake. He instead claimed at the second trial that he did not remember who he was talking to, did not recall the number of the phone he used, and no longer had the phone itself. In short, according to Brown, his statements at the first trial were "honest mistakes" and were therefore "not perjury and not obstruction of justice." [354, at 2.]

The jury heard two versions of the events from Brown – one from the first trial and one from the second. It also heard the Government's version, which differs in many respects from Brown's, including that according to the Government's witnesses, Brown was not on the phone with anyone in the critical minute or so between the officers' arrival at the barber shop and his arrest. According to the officers, Brown fled through the barbershop before being apprehended at the back fence immediately after he threw his gun over the fence into the alley. The testimony introduced by the Government provided ample evidence from which the jury could have (a) rejected Defendant's recollection of what transpired immediately prior to his arrest and (b) determined that Defendant's shifting and thinly-supported narrative was a lie. The jury certainly was not obligated to accept Defendant's testimony or his explanation that the discrepancies

4

between what he said at the first trial and what he said at the second one were unintentional mistakes instead of attempts to deceive. Given that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences" (*United States v. Hagan*, 913 F.2d 1278, 1281 (7th Cir. 1990)), these were calls for the jury to make that cannot be second-guessed by the Court.

In sum, viewing the evidence in the light most favorable to the government, a "rational trier of fact" could have found Brown's claims that he did not intend to obstruct justice implausible. See *Moore*, 572 F.3d at 337; *Presbitero*, 569 F.3d at 704 (to prevail on a motion for acquittal, the record must contain "no evidence, regardless of how it is weighed, from which a jury could have returned a conviction"). The jury was able to evaluate Brown's credibility and come to a reasoned judgment about his state of mind and intent. Viewing the evidence in the light most favorable to the government, a rational trier of fact could easily have found with respect to Count Two that Brown corruptly attempted to obstruct his first trial by testifying falsely about what he was doing immediately prior to and at the moment of his arrest.

Largely the same analysis applies to the perjury charge in Count Three. Again, the jury could reasonably have determined that Brown's explanation at the first trial that on February 6, 2016, he did not run for the police with a firearm in his possession, and instead was in the back lot of the barbershop on the telephone, was not credible. Accordingly, viewing the evidence in the light most favorable to the government, the Government introduced ample evidence from which the jury could reasonably conclude that Brown corruptly attempted to obstruct justice and knowingly and willfully made a material false statement in his first trial. See *Gorman*, 613 F.3d at 716 (7th Cir. 2010) (affirming denial of motion for acquittal on false statement conviction and finding that it was "within the jury's province" to determine whether the defendant's testimony

was knowingly false); see also *United States v. Jarrett*, 447 F.3d 520, 530 (7th Cir. 2006) ("a trial judge does not sit as a 13th juror to evaluate the credibility of a witness").

Finally, the jury's inability to reach a verdict on Count One is neither legally inconsistent with its verdicts on Counts Two and Three nor suggestive that an acquittal on Counts Two and Three is appropriate. To the contrary, the jury's lengthy and careful deliberations indicate that it was not convinced beyond a reasonable doubt that Brown possessed a gun on February 6, 2016 but was convinced beyond a reasonable doubt that the story he told at the first trial in an effort to convince the jury not to convict him was materially false and concocted to obstruct the jury's search for truth in the first trial. Considering the totality of the evidence in this case, it certainly is possible—and in fact not at all difficult to conjure—that at least one juror on each occasion found the inconsistencies in the officers' testimony about what they saw in the barbershop that night sufficiently troubling to have doubt that Brown had a gun that night while at the same time unanimously concluding that his testimony at the first trial was a bald-faced lie.

  **B.**  **Count Four**

In order to prove Brown guilty of violating 18 U.S.C. § 922(g)(1) as charged in Count Four, the Government had to prove: (1) that he knowingly possessed ammunition on July 11, 2019; (2) that he previously had been convicted of a crime punishable by imprisonment for a term exceeding one year; (3) that he knew that he had been convicted of a crime punishable by imprisonment for more than one year; and (4) the ammunition had been transported in interstate or foreign commerce before the defendant possessed it. See [372 (Jury Instruction, p. 22)]; *Rehaif v. United States*, 139 S. Ct. 2191 (2019). The parties stipulated to elements (2), (3), and (4), leaving element (1) as the only contested issue as to Count Four. The jury thus had to determine only whether Brown knowingly possessed the ammunition on July 11, 2019.

On that issue, the Government presented the testimony of five Chicago police officers, as well as video from surveillance cameras attached to a large building across the street from the location where Brown crashed his car just prior to his arrest on July 11, 2019. Officers Delcid, Jankowski, Valentino, Miranda, and Apacible each testified about the sequence of events leading up to the arrest. That testimony indicated that shortly after CPD curbed the Chevy SUV that Brown was driving, Brown fled from the traffic stop at a high speed, careening through the streets of Chicago for a few blocks before crashing into three parked cars and a brick wall on West Fifth Avenue. The video recordings captured the crash, as well as the occupants of the vehicle running from the car and down the street. Brown is seen bailing out the driver's side window and sprinting down Fifth Avenue. As he passes a dump truck parked across the street from the cameras, he tosses an object into the bed of the truck. Shortly thereafter Brown surrenders to the police who have arrived on the scene. Co-Defendant Montgomery also is captured on video running up the street on the side of the dump truck closest to the cameras. He drops a gun near the front tire of the truck and runs past the truck only to encounter police converging on the scene, at which time he reverses direction and runs down the sidewalk—essentially following Brown back toward the scene of the accident—when he too surrenders to police. The video evidence later showed CPD officers recovering a gun from the side of the truck where Montgomery threw it and a fully loaded magazine from the back of the truck bed.

Prior to trial, Montgomery pled guilty to Count Five and in fact acknowledge at trial what the video plainly showed—namely, that he tossed the gun in his possession as he was fleeing down Fifth Avenue. Montgomery also tried to convince the jury that the magazine was his and that he had somehow shoved the magazine into an opening in the side of the truck bed facing away from the video camera as he sprinted down the sidewalk. Brown claims that the object that he tossed

7

was not ammunition, but rather his cell phone. The testimony from the CPD officers confirmed that a gun and a magazine were recovered from the scene, but no cell phone was ever found.

Keeping in mind that (a) "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences," *Hagan*, 913 F.3d at 1281, and (b) the standard that the evidence is to be viewed in the light most favorable to the Government, there was ample evidence from which the jury could reasonably conclude that Brown possessed the loaded magazine on July 11, 2019. The jury certainly was not obliged to accept either Brown's or Montgomery's testimony or to reject the officers' or the evidence presented from the video recordings.

Dated: April 21, 2021

_____
Robert M. Dow, Jr.
United States District Judge